**THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| OMAR HERNANDEZ, individually and on behalf of others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No.: 1:20-cv-3010 |
| ILLINOIS INSTITUTE OF TECHNOLOGY, | ) ) | (JURY TRIAL DEMANDED) |
| Defendant. | ) ) ) | |

**AMENDED CLASS ACTION COMPLAINT**

Plaintiff Omar Hernandez ("Plaintiff") by and through undersigned counsel, brings this action against Illinois Institute of Technology ("Defendant" or the "Institute") on behalf of himself and all others similarly situated, and makes the following allegations based upon information, attorney investigation and belief, and upon Plaintiff's own knowledge:

**PRELIMINARY STATEMENT**

1.     Plaintiff brings this case as a result of Defendant's decision to not issue appropriate refunds for the Spring 2020 semester after canceling in-person classes and changing all classes to an online/remote format, closing most campus building and requiring all students who could leave campus to leave as a result of the Novel Coronavirus Disease ("COVID-19").

2.     This decision deprived Plaintiff and other members of the Classes from recognizing the benefits of on-campus enrollment, access to campus facilities, student activities, and other benefits and services in exchange for which they had already paid fees and tuition.

3.     Defendant has either refused to provide reimbursement for the tuition, fees, and other costs that Defendant failed to provide during the Spring 2020 semester, or has provided

inadequate and/or arbitrary reimbursement that does not fully compensate Plaintiff and members of the Classes for their loss.

4.      This action seeks refunds of the amount Plaintiff and members of the Classes are owed on a *pro-rata* basis, together with the damages as pled herein.

## **PARTIES**

5.      Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

6.      Illinois Institute of Technology is an institution of higher learning located in Chicago, Illinois.

7.      Upon information and belief, Defendant has an estimated endowment of approximately $242.9 Million.[1]'

8.      Moreover, upon information and belief, Defendant was allocated more than $3.7 million of federal stimulus under the CARES Act.[2]

9.      From this bailout, Defendant has apparently set aside only $1.86 million (the bare minimum required by law) to be distributed to students, presumably intending to retain the remaining $1.86 million for themselves.[3]

10.     Plaintiff is an individual and a resident and citizen of Illinois.

11.     Plaintiff was enrolled at Illinois Institute of Technology during the Spring 2020 term.

---

[1] https://web.iit.edu/sites/web/files/departments/controller/pdfs/Fiscal%20Year%202019%20Financial%20Statements.pdf.
[2] https://www2.ed.gov/about/offices/list/ope/allocationsforsection18004a1ofcaresact.pdf
[3] https://www.iit.edu/financial-aid/cares-act#:~:text=The%20CARES%20Act%20designates%20funds,campus%20operations%20due%20to%20coronavirus

## JURISDICTION AND VENUE

12.     Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

13.     This Court has jurisdiction over this action pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), because at least one class member is of diverse citizenship from one Defendant, there are more than 100 Class members, and the aggregate amount in controversy exceeds $5 million, exclusive of interest and costs.

14.     This Court has personal jurisdiction over Defendant because Defendant conducts business in Illinois and has sufficient minimum contacts with Illinois.

15.     Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this District.

## BACKGROUND FACTS

16.     Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

17.     Plaintiff was enrolled as a full-time student for the Spring 2020 academic semester at Defendant's institution.

18.      As a precondition for enrollment, Plaintiff was required to and did pay substantial tuition for the Spring 2020 semester either out of pocket or by utilizing student loan financing, as did all members of the putative Tuition Class.

19.     There are hundreds, if not thousands, of institutions of higher learning in this country.

20.     Many schools nationwide offer and highlight remote learning capabilities as a primary component of their efforts to deliver educational value, such as, Western Governors

University, Southern New Hampshire University, and University of Phoenix-Arizona. Defendant is not such a school.

21. Rather, a significant focus of Defendant's efforts to obtain and recruit students pertains to the campus experience it offers, along with face-to-face, personal interaction with skilled and renowned faculty and staff, through "hands on learning." Through its website and other literature, the University sells on-campus instruction and the on-campus experience as key reasons that a student should choose to attend IIT.

22. For example, Defendant promises that their hands-on learning approach is "one of a kind" and forms the foundation of their educational approach.[4] [5]



**Learn By Doing →**

One-of-a-kind active learning programs form the foundation of Illinois Tech's undergraduate education. Experience a new way of learning—one that will prepare you to innovate and lead.

Action-oriented, immersive experiences define the Illinois Tech education. We're one-of-a-kind, and our hands-on programs prove it. From Illinois Tech's signature Interprofessional Projects (IPRO) Program to high-tech maker spaces to cutting-edge research, we prepare you to think big and lead big like no other university can. And it all begins in your first year of study.

23. Plaintiffs and members of the proposed Tuition Class did not choose to attend another institution of higher learning, or to seek an online degree, but instead chose to attend

---

[4] https://www.iit.edu/.
[5] https://www.iit.edu/academics/active-learning.

Defendant's University and specifically chose to pay a premium tuition to enroll in the on-campus program.

24.     Accordingly, when students pay tuition in exchange for enrollment in the on-campus programs at Defendant's Institute, such students expect to receive, and Defendant has promised to provide, benefits and services above and beyond basic academic instruction, which include but are not limited to:

    a.   Face-to-face interaction with professors, mentors, and peers;

    b.   Access to facilities such as computer labs, study rooms, laboratories, libraries, etc.;

    c.   Student governance and student unions;

    d.   Extra-curricular activities, groups, intramurals, etc.;

    e.   Student art, cultures, and other activities;

    f.   Exposure to community members of diverse backgrounds, cultures, and schools of thought;

    g.   Social development and independence;

    h.   Hands-on learning and experimentation; and

    i.   Networking and mentorship opportunities.

25.     Plaintiff's education was changed from in-person, hands-on learning to online instruction during the Spring 2020 term.

26.     When this happened, Plaintiff was forced from campus and deprived of the benefit of the bargain for which he had paid, and in exchange for which Defendant had accepted, tuition as set forth more fully above.

27.     In addition to tuition, Defendant charges certain mandatory fees to students enrolled in the in-person programs, including but not limited to an activity fee and a student services fee.

28.     The activity fee is a mandatory fee charged to all students at Defendant's institution, including graduate and undergraduate students, and full and part time students; except that said fee is not charged to students enrolled in the law school.[6]

29.     The school advertises the activity fee as "a mandatory fee that assists programs directly related to campus activities in conjunction with student organizations . . . [including] student organizations' operational, programming, and conference budgets as well as large-scale campus events."

30.     Student's at Defendant's law school do not pay the activity fee, but rather pay a different fee called a student activity fee.[7]

31.     This student activity fee is advertised as a fee providing "funding for major speakers, and for all other organizations and activities."[8]

32.     The student services fee is a mandatory fee charged to all students at Defendant's institution, including graduate and undergraduate students, and full and part time students; except that said fee is not charged to students enrolled in the law school or the Institute of Design.[9]

33.     The student services fee is advertised as "a mandatory fee that supports many on-campus departments such as Athletics, Paul V. Galvin Library, Career Services, and Technology Services."[10]

34.     Defendant charges students in its school of business a separate mandatory fee called a professional co-curricular fee.[11]

---

[6] See, generally, https://web.iit.edu/student-accounting/tuition-fees/current-tuition.
[7] https://www.kentlaw.iit.edu/current-students/tuition-and-financial-assistance/tuition-and-fees/archives/jd-tuition-and-fees-2019-20.
[8] Id.
[9] See, generally, https://web.iit.edu/student-accounting/tuition-fees/current-tuition.
[10] https://web.iit.edu/student-accounting/tuition-fees/mandatory-and-other-fees#student-service-fee.
[11] https://web.iit.edu/student-accounting/tuition-fees/current-tuition/stuart-school-business.

35.     This fee is advertised as a mandatory fee supporting "co-curricular programs that enhance students' academic experience and increase their career readiness."[12]

36.     Finally, Defendant charges a studio fee for all students enrolled in the Institute of Design program(s).[13]

37.     In addition to the above referenced mandatory fees, Defendant charges a myriad of other program-specific and access based fees, including without limitation, a parking fee for students desiring to park on campus.

38.     Plaintiff was required to and did pay all mandatory fees associated with his Spring 2020 enrollment.

39.     As a result of the actions and announcements of Defendant during the Spring 2020 term, Plaintiff and members of the Fees Class no longer had the benefit of the access and services for which these fees were paid.  For example, campus activities were cancelled; student organizations were prohibited from offering campus programming, and were likewise prevented from traveling to or hosting conferences; all large-scale (and even small scale) campus events were cancelled and prohibited; no major speakers were hosted on campus; athletics were suspended; and campus buildings, including libraries and studios, were closed and not available for student access or use.

**FACTUAL ALLEGATIONS**

40.     Upon information and belief, Defendant's Spring term began with the first day of classes on or about January 13, 2020.[14]

41.     Upon information and belief, Defendant's Spring term was scheduled to conclude

---

[12] https://web.iit.edu/student-accounting/tuition-fees/mandatory-and-other-fees#co-curricular-fee.
[13] https://web.iit.edu/student-accounting/tuition-fees/current-tuition/institute-design.
[14] https://web.iit.edu/registrar/academic-calendar.

with the last day of examinations on or about May 9, 2020 and commencement ceremonies on May 16, 2020.[15]

42.　　Defendant's Spring break began on or about March 16, 2020 and was supposed to end on or about March 21, 2020, with students to return for in person classes beginning March 23, 2020.[16]

43.　　However, as a result of the COVID-19 pandemic, Defendant announced on March 12, 2020 that it was moving all classes online following the return from Spring Break.[17]

44.　　In this announcement, Defendant "strongly encourage[ed] students planning to depart for spring break to make plans not to return to campus until further notice and finish the semester from home, if at all possible."[18]

45.　　On March 12, 2020, Defendant announced that all university-sponsored air and train travel was being suspended immediately, including class activities, athletic endeavors, and conference attendance.[19]

46.　　On March 16, 2020, Defendant announced that neither its libraries nor the Keating Sports Center would re-open to students following Spring Break.[20]

47.　　On March 19, 2020, Defendant again issued a notice "strongly urging" students not to return following Spring Break, and noting, "[s]tudents who have absolutely no other option but to return to the university must understand that they will be returning to a very different campus environment."[21]

---

[15] Id.
[16] Id.
[17] https://www.iit.edu/COVID-19.
[18] Id.
[19] Id.
[20] Id.
[21] Id.

8

48.     On March 20, 2020, Defendant announced that it would be moving nearly all classes to a pass/fail grading model.[22]  This varied significantly from similar institutions that allowed students the option, but did not require all students to universally switch to pass/fail grading.

49.     This uniform policy operated to the detriment of many students.

50.     Also on March 20, 2020, Defendant issued a notice that abandoned the notion of "strongly discouraging" students from returning to campus, and instead, outright prohibited students from returning to campus, absent extraordinary circumstances.[23]

51.     For students who were permitted to remain on campus, Defendant restricted their movements to the dorms, dining facilities, and travel for essential services.[24]

52.     Almost immediately, students at Defendant's Institute started demanding a refund on their tuition.

53.     As of drafting this Complaint, a student created petition for refunds of tuition has over 1,100 signatures.[25]

54.     Although Defendant continued to offer some level of academic instruction via online classes, Plaintiff and members of the proposed Tuition Class were deprived of the benefits of on campus learning as set forth more fully above.

55.     Likewise, Plaintiff and members of the proposed Fees Class were deprived of utilizing services for which they had already paid, such as access to campus facilities, and other opportunities.

56.     Nonetheless, Defendant has refused and continues to refuse to offer any pro-rated

---

[22] Id.
[23] Id.
[24] Id.
[25] https://www.change.org/p/alan-w-cramb-refund-partial-tuition-costs-to-illinois-tech-iit-students.

discounts or refunds on the tuition and mandatory fees that Students have already pre-paid:[26]

> **Q: Will my tuition be refunded or discounted for the Spring semester? What about activity and/or student fees?**
> **A:** Our goal is to ensure academic instruction continues throughout the semester. Because instruction has continued, tuition and applicable fees will not be refunded.

## CLASS ACTION ALLEGATIONS

57.     Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

58.     Plaintiff brings this action on behalf of himself and as a class action, pursuant to the provisions of Rule 23 of the Federal Rules of Civil Procedure on behalf of the following Classes:

> **The Tuition Class:**
>
> All people who paid tuition for or on behalf of students enrolled in classes at the Institute for the Spring 2020 semester but were denied live, in-person instruction and forced to use online distance learning platforms for the latter portion of that semester.
>
> **The Fees Class:**
>
> All people who paid fees for or on behalf of students enrolled in classes at the Institute for the Spring 2020 semester.

59.     Excluded from the Classes is Illinois Institute of Technology, and any of their respective members, affiliates, parents, subsidiaries, officers, directors, employees, successors, or assigns; and the judicial officers, and their immediate family members, and Court staff assigned to this case.  Plaintiff reserves the right to modify or amend the Class definitions, as appropriate, during the course of this litigation.

60.     Certification of Plaintiff's claims for class-wide treatment is appropriate because

---

[26] https://web.iit.edu/financial-aid/covid-19

Plaintiff can prove the elements of their claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

61.     This action has been brought and may be properly maintained on behalf of the Classes proposed herein under Federal Rule of Civil Procedure 23.

**Numerosity: Fed. R. Civ. P. 23(a)(1)**

62.     The members of the Classes are so numerous and geographically dispersed that individual joinder of all members is impracticable.  Plaintiff is informed and believes that there are thousands of members of the Classes, the precise number being unknown to Plaintiff, but such number being ascertainable from Defendant's records.  Members of the Classes may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. mail, electronic mail, internet postings, and/or published notice.

**Commonality and Predominance: Fed. R. Civ. P. 23(a)(2)**

63.     This action involves common questions of law and fact, which predominate over any questions affecting individual members of the Classes, including, without limitation:

(a)     Whether Defendant engaged in the conduct alleged herein;

(b)     Whether there is a difference in value between enrollment in an online distance learning program and enrollment in a live, on-campus instructional program;

(c)     Whether Defendant breached its contracts with Plaintiff and the other members of the Tuition Class by retaining the portion of their tuition representing the difference between the value of online distance learning and on-campus, in-person enrollment;

(d)     Whether Defendant was unjustly enriched by retaining tuition payments of

Plaintiff and the Tuition Class representing the difference between the value of online distance learning and on-campus, in-person enrollment;

(e) Whether Defendant breached its contracts with Plaintiff and the other members of the Fees Class by retaining fees without providing the services, benefits and/or programs the fees were contracted to cover;

(f) Whether Defendant was unjustly enriched by retaining fees of Plaintiff and the other members of the Fees Class without providing the services, benefits and/or programs the fees were intended to cover;

(g) Whether certification of any or all of the classes proposed herein is appropriate under Fed. R. Civ. P. 23;

(h) Whether Class members are entitled to declaratory, equitable, or injunctive relief, and/or other relief; and

(i) The amount and nature of relief to be awarded to Plaintiff and the other members of the Classes.

**Typicality: Fed. R. Civ. P. 23(a)(3)**

64. Plaintiff's claims are typical of the claims of other members of the Classes because, among other things, all such members were similarly situated and were comparably injured through Defendant's wrongful conduct as set forth herein.

**Adequacy: Fed. R. Civ. P. 23(a)(4)**

65. Plaintiff is an adequate representative of the Classes because his interests do not conflict with the interests of other members of the Classes they seek to represent. Plaintiff has retained counsel competent and experienced in complex litigation and Plaintiff intends to prosecute the action vigorously. The interests of the Classes will be fairly and adequately protected

by Plaintiff and his counsel.

**Superiority: Fed. R. Civ. P. 23(b)(3)**

66.     A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action.  The damages or other financial detriment suffered by Plaintiff and other members of the Classes are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendant, so it would be impracticable for members of the Classes to individually seek redress for Defendant's wrongful conduct.

67.     Even if members of the Classes could afford individual litigation, the Court system likely could not.  Individualized litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system.  By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, comprehensive supervision by a single court, and finality of the litigation.

**Certification of Specific Issues: Fed. R. Civ. P. 23(c)(4)**

68.     To the extent that any described Class herein does not meet the requirements of Rules 23(b)(2) or (b)(3), Plaintiff seeks the certification of issues that will drive the litigation toward resolution.

**Declaratory and Injunctive Relief: Fed. R. Civ. P. 23(b)(2)**

69.     Defendant has acted or refused to act on grounds generally applicable to Plaintiff and the other members of the Classes, thereby making appropriate final injunctive relief and declaratory relief, as described herein, with respect to the members of the Classes as a whole.

**FOR A FIRST COLLECTIVE CAUSE OF ACTION**
**BREACH OF CONTRACT**

**(Plaintiff and Other Members of the Tuition Class)**

70.     Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

71.     Plaintiff brings this count on behalf of himself and other members of the Tuition Class.

72.     Plaintiff and the other members of the Tuition Class entered into contracts with Defendant which provided that Plaintiff and other members of the Tuition Class would pay tuition for or on behalf of students and, in exchange, Defendant would enroll such students and admit them to campus; granting them the full rights and privileges of student status, including but not limited to access to campus facilities, access to campus activities, and live, in-person instruction in a physical classroom.

73.     The rights and privileges of student status that comprise the contractual terms are set forth by Defendant through its website, academic catalogs, student handbooks, correspondence, marketing materials and other circulars, bulletins, and publications.

74.     These rights and privileges form the basis of the bargain on which prospective students agree to accept Defendant's offer of enrollment in exchange for the payment of tuition and fees.

75.     One such right is the ability to be physically present on campus, and fully enjoy the facilities, services, and opportunities provided thereon, including the campus' location and surrounding opportunities within Chicago.

76.     Indeed, students are promised the right to take their courses on one of Defendant's

two physical campuses:[27]

## CAMPUS LOCATIONS

Students can take courses at either the Mies Campus or the Daniel F. and Ada L. Rice Campus in Wheaton, a Chicago suburb. The Mies Campus has the most extensive offering of day and evening classes. The Rice Campus offers evening classes, most of which start at 6:25 p.m. The majority of undergraduate courses taught at the Rice Campus are 300- and 400-level courses both in information technology and management and in industrial technology and management.

77.     Defendant's website and recruitment brochures are the primary means through which Defendant targets prospective new students and attempts to influence such students to apply for enrollment at the Institution as opposed to other institutions of higher learning.

78.     Through these publications, Defendant markets to and enrolls students in a distinct educational experience consisting of on-campus, in-person instruction and related benefits.

79.     Defendant's publications are full of references to the on-campus experience, including numerous references to student activities; campus amenities; class size and student/teacher ratios; campus diversity, campus location, and the like.[28]

"Location is everything" perfectly summarizes the campus and residential experience at Illinois Tech. Locate less than a mile from stunning Lake Michigan beaches, Illinois Tech's historic Mies Campus is highly regarded as one of the country's most beautiful college campuses.

Access to convenient public transportation takes you anywhere in the Chicago metro area that you want to go. Explore an endless number of restaurants, parks, sports, cultural, entertainment, and professional opportunities in our vibrant, global city.

When you're ready to call it a day, our quiet, tree-lined campus is just a few miles from downtown. And when you arrive, our residences welcome you with amenities, including an array of dining options and 24/7 security to make you feel right at home.

80.     Defendant specifically acknowledges that it offers students services that include

---

[27] http://bulletin.iit.edu/undergraduate/undergraduate-admission/
[28] https://www.iit.edu/student-experience/campus-and-housing.

life on campus among other things.[29]

> Illinois Tech provides a variety of services that enable students to study and live healthy, free of unnecessary burdens. These services extend to academic and financial assistance and life on campus, as well as resources to maintain students' physical and mental well-being.

81.     Those prospective students who were interested in enrolling at the Institute after consuming the marketing materials described above were invited to complete applications, and some were selected for and offered admission.

82.     When a student is offered admission to the Institute, that student receives a number of further communications and has a number of additional interactions with Defendant.

83.     Initially, the student will receive an acceptance letter, setting forth Defendant's formal offer of admission.

84.     Accepted students (and their families) are encouraged to attend one of several Admitted Student Days (which is hosted on Defendant's campus) where Defendant again attempts to convince such students to accept their offers of admission by highlighting the University's location and the many benefits of being on campus.

85.     When students formally accept their offers for enrollment in the on-campus program, they are directed to visit the admitted student's page of Defendant's website, which begins:[30]

> Congratulations on your admission to Illinois Tech! You're about to embark on a new journey at Chicago's only tech-focused university. Experience an idea-driven curriculum with access to high-caliber research opportunities, an exciting campus life, and a window to the world through our location in the great global city of Chicago.

86.     Before the start of their first semester, students are required to attend a mandatory new student orientation program on-campus.

---

[29] https://www.iit.edu/student-experience/services-and-resources.
[30] https://www.iit.edu/resources-admitted-students/undergraduate

87.     During orientation students are again welcomed to the campus "community," given campus tours, informed about campus services and activities, and encouraged to learn about and join on-campus student organizations.

88.     Once students make it through orientation [and for returning students], it comes time to register for classes.  This is another area where Defendant specifically promises the provision of in-person, on-campus instruction, which Defendant calls "traditional instruction."

89.     Although Defendant does not offer fully online undergraduate degrees, Defendant has always offered a limited number of fully online classes and a select few fully online graduate degree programs.

90.     Defendant considers the online programs and the traditional on-campus programs to be separate and distinct products, stating in its catalog, "[o]nline and face-to-face course sections may share a Blackboard course shell, yet the sections are distinct."[31]

91.     Defendant's registration portal is careful to highlight the instructional method of each class.

92.     During registration, it is vitally important that students understand whether they are signing up for in-person or online classes because Defendant's polices specifically prohibit traditional students from registering for online classes, absent approval:[32]

## Internet Course Registration

All undergraduate students are required to obtain approval from their primary academic advisor and permission from the department prior to registering for any Internet sections of a course. You may contact the appropriate individuals listed on our Department Permit and Time-Conflict Approvers page to request an electronic permit from the department.

---

[31] http://bulletin.iit.edu/undergraduate/campus-overview/campus-resources/office-of-digital-learning/
[32] https://web.iit.edu/registrar/registration/internet-course-registration

93.     Accordingly, for each published class, Defendant publishes the instruction

method for that class.

94.     Classes offered for in-person instruction are listed not only by description, but

also by meeting time and physical classroom location.  Such classes are specifically labeled as

"Traditional Instruction Method" classes:[33]

**Organic Chemistry I-Lecture - 29946 - CHEM 235 - 01**

**Associated Term:** Spring 2020
**Registration Dates:** Nov 04, 2019 to Jan 25, 2020
**Levels:** Undergraduate
**Attributes:** Standard Tuition Rate

Mies Campus
Lecture Schedule Type
Traditional Instructional Method
3.000 Credits
View Catalog Entry

*Scheduled Meeting Times*

| Type | Time | Days | Where | Date Range | Schedule Type | Instructors |
|---|---|---|---|---|---|---|
| Class | 11:25 am - 12:40 pm | TR | Robert A. Pritzker Science Ctr 213 | Jan 13, 2020 - May 03, 2020 | Lecture | Katherine Leight (P) |
| Final Exam | 8:00 am - 10:00 am | T | Robert A. Pritzker Science Ctr 213 | May 05, 2020 - May 05, 2020 | Lecture | Katherine Leight (P) |

95.     Conversely, classes offered for online instruction are published as being offered

through the "Internet Campus" and designated, "Online Instructional Method":[34]

**Analytical Chemistry - 51539 - CHEM 247 - 02**

**Associated Term:** Spring 2020
**Registration Dates:** Nov 04, 2019 to Jan 25, 2020
**Levels:** Undergraduate
**Attributes:** Communications Requirement, Lab Safety Instruction, Standard Tuition Rate

Internet Campus
Lecture Schedule Type
Online Instructional Method
0.000 OR 3.000 Credits
View Catalog Entry

*Scheduled Meeting Times*

| Type | Time | Days | Where | Date Range | Schedule Type | Instructors |
|---|---|---|---|---|---|---|
| Class | TBA | | TBA | Jan 13, 2020 - May 03, 2020 | Lecture | Xiyun Guan (P) |

---

[33] https://ssb.iit.edu/bnrprd/bwckschd.p_get_crse_unsec
[34] Id.

96.    That Defendant offered to provide, and members of the Tuition Class expected to receive, instruction on the physical campus is further evidenced by the parties' prior course of conduct.

97.    Those classes for which students expected to receive in-person instruction began the Spring 2020 semester by offering in-person instruction.

98.    Each day for the weeks and months leading up to March 16, 2020, students attended physical classrooms to receive in-person instruction, and Defendant provided such in-person instruction.

99.    Likewise, upon information and belief, most students were provided with syllabi and other documents that referenced class meeting schedules, locations, and physical attendance requirements.

100.    Each day for the weeks and months prior to announced closures, students had access to the full campus.

101.    Accordingly, it is clear that Defendant offered to provide live, in-person education, together with a full on-campus experience and that members of the Tuition Class accepted that offer by paying tuition and attending classes during the beginning of the Spring 2020 semester.

102.    Based on this mutual assent, Plaintiff and other members of the Tuition Class fulfilled their end of the bargain when they paid tuition for the Spring 2020 semester, either by paying out of pocket or by using student loan financing, or otherwise.

103.    However, the Institute breached the contract with Plaintiff and other members of the Tuition Class by moving all classes for the Spring 2020 semester to online distance learning platforms, and restricting the on-campus experience without reducing or refunding tuition accordingly.

104.     This cause of action does not seek to allege "academic malpractice."

105.     Rather, it is clear from the facts and circumstances that Defendant offered a specific product, that being live, in-person, on-campus education, with its featured ancillary and related services.

106.     Plaintiff and members of the Tuition Class accepted Defendant's offer for live in-person on-campus education and paid valuable consideration in exchange.

107.     However, after accepting such consideration from Plaintiff and other members of the Tuition Class, Defendant provided a materially different product, which deprived Plaintiff and other members of the Tuition Class of the benefit of the bargain for which they had already paid.

108.     Defendant retained tuition monies paid by Plaintiff and other members of the Tuition Class, without providing them the full benefit of their bargain.

109.     Defendant's refusal to offer refunds is in bad faith.

110.     Plaintiff and other members of the Tuition Class have suffered damage as a direct and proximate result of Defendant's breach amounting to the difference in the fair market value of the services and access for which they contracted, and the services and access which they actually received.

111.     As a direct and proximate result of Defendant's breach, Plaintiff and other members of the Tuition Class are legally and equitably entitled to damages, to be decided by the trier of fact in this action, to include disgorgement of the difference between the fair market value of the online learning provided versus the fair market value of the live, in-person instruction in a physical classroom on a physical campus with all the attendant benefits for which they contracted.

**FOR A SECOND COLLECTIVE CAUSE OF ACTION**
**UNJUST ENRICHMENT**

**(Plaintiff and Other Members of the Tuition Class)**

112.     Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

113.     Plaintiff brings this count on behalf of himself and other members of the Tuition Class.

114.     This claim is pled in the alternative to, and to the extent it is determined a contract does not exist or otherwise apply, the contract-based claim set forth in the First Cause of Action above.

115.     Plaintiff and other members of the Tuition Class paid substantial tuition for live, in-person instruction in physical classrooms on a physical campus with all the attendant benefits.

116.     Plaintiff and other members of the Tuition Class conferred a benefit on Defendant when they paid this tuition.

117.     Defendant has realized this benefit by accepting such payment.

118.     However, Plaintiff and other members of the Tuition Class did not receive the full benefit of their bargain.

119.     Instead, Plaintiff and other members of the Tuition Class conferred this benefit on Defendant in expectation of receiving one product, *i.e.*, live in-person instruction in a physical classroom along with the on-campus experience of campus life as described more fully above, but they were provided with a materially different product carrying a different fair market value, *i.e.*, online instruction devoid of the on-campus experience, access, and services.

120.     Defendant has retained this benefit, even though Defendant has failed to provide the services for which the tuition was collected, making Defendant's retention unjust under the

circumstances.

121.    As a result of closing campus and moving classes online, Defendant saved significant sums of money in the way of reduced utility costs, reduced maintenance and staffing requirements, reduced or eliminated hours for hourly employees, reduced or eliminated hours for paid work study students, and otherwise.

122.    Simply put, it is significantly cheaper to operate a remote, on-line campus than a fully open physical campus.  But even if it was not, it is not the product that students were offered and not the product the students expected to receive.

123.    Equity and good conscience require that the College return a portion of the monies paid in tuition to Plaintiff and other members of the Tuition Class.

124.    This is particularly true where, as here, Defendant is supported by a $242.9 million endowment, while its students on information and belief, do not have access to such immense financial resources, and further where, on information and belief, a substantial portion of its students have incurred substantial debt to finance an educational experience that they did not receive.

125.    At the same time, Defendant received significant aid from the federal government, of which Defendant has indicated that it intends to retain roughly $1.86 million for itself, as opposed to passing it along to students.

126.    Defendant should be required to disgorge this unjust enrichment to the extent that Defendant has retained more than the fair market value for the product that Defendant was able to provide.

**FOR A THIRD COLLECTIVE CAUSE OF ACTION
BREACH OF IMPLIED CONTRACT**

**(Plaintiff and Other Members of the Tuition Class)**

127.     Plaintiff hereby incorporates by reference the allegations contained as though fully set forth herein.

128.     Plaintiff pleads this Count in the alternative to Count I.

129.     Plaintiff and other members of the Tuition Class entered into an implied contract by accepting Defendant's offer to register for on-campus classes and use of Defendant's facilities in accordance with Defendants' usual and customary practice of providing on-campus courses.

130.     Under the implied contract, Plaintiff and the other members of the Tuition Class members registered for on-campus courses.

131.     It was the reasonable expectation of Plaintiff and the other members of the Tuition Class that Defendant would provide them with on-campus-as opposed to online-classes and instruction and use of Defendant's facilities as mutually agreed and intended in accordance with Defendant's publications including, but not limited to, brochures, advertisements, and other promotional materials and Defendant's usual and customary practice of providing on-campus courses.

132.     Plaintiff and the other members of the Tuition Class accepted and intended to use and enjoy Defendant's on-campus classes and facilities.

133.     Plaintiff and the other members of the Tuition Class have fulfilled all expectations of their mutual agreement, by registering and paying for on-campus courses and access to on-campus facilities and services for the Spring 2020 semester. Plaintiff and the other members of the Tuition Class have paid Defendant for all Spring 2020 semester financial assessments.

134.    However, Defendant breached the implied contract, failed to provide those on-campus classes and/or services, and has not otherwise performance as obligated and required by the implied-in-fact contract between Plaintiff and the other members of the Tuition Class and Defendant. Defendant moved all classes to online classes, restricted or eliminated Class Members' ability to access university facilities, and/or evicted Plaintiff and the other members of the Tuition Class from campus housing. In doing so, Defendant has deprived and continue to deprive Plaintiff and the other members of the Tuition Class from the benefit of their bargain with Defendant.

135.    Plaintiff and the other members of the Tuition Class have been damaged as a direct and proximate result of Defendant's breach. The online classes provided by Defendant is objectively different from and less valuable than the on-campus classes for which the parties entered into an implied contract.

136.    Plaintiff and the other members of the Tuition Class are legally and equitably entitled to damages to be decided by the trier of fact in this action, to include disgorgement of the difference between the fair market value of the online learning provided versus the fair market value of the live, in-person instruction in a physical classroom on a physical campus with all the attendant benefits for which they contracted.

### FOR A FOURTH COLLECTIVE CAUSE OF ACTION
### BREACH OF CONTRACT

### (Plaintiff and Other Members of the Fees Class)

137.    Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

138.    Plaintiff brings this count on behalf of himself and other members of the Fees Class.

139.    In addition to tuition, Defendant charges a number of mandatory fees.

140.    In its publications and, particularly on its website, Defendant specifically describes the nature and purpose of each fee.

141.    Some fees apply broadly to all or certain groups of students, while other fees are program or course based.

142.    Such fees are set forth not only in amount but also in description and purpose through the various academic catalogs and on the website.

143.    The activity fee is a mandatory fee charged to all students at Defendant's institution, including graduate and undergraduate students, and full and part time students; except that said fee is not charged to students enrolled in the law school.[35]

144.    The school advertises the activity fee as "a mandatory fee that assists programs directly related to campus activities in conjunction with student organizations . . . [including] student organizations' operational, programming, and conference budgets as well as large-scale campus events."

145.    Student's at Defendant's law school do not pay the activity fee, but rather pay a different fee called a student activity fee.[36]

146.    This student activity fee is advertised as a fee providing "funding for major speakers, and for all other organizations and activities."[37]

147.    The student services fee is a mandatory fee charged to all students at Defendant's institution, including graduate and undergraduate students, and full and part time students; except that said fee is not charged to students enrolled in the law school or the Institute of Design.[38]

---

[35] See, generally, https://web.iit.edu/student-accounting/tuition-fees/current-tuition.
[36] https://www.kentlaw.iit.edu/current-students/tuition-and-financial-assistance/tuition-and-fees/archives/jd-tuition-and-fees-2019-20.
[37] Id.
[38] See, generally, https://web.iit.edu/student-accounting/tuition-fees/current-tuition.

148.    The student services fee is advertised as "a mandatory fee that supports many on-campus departments such as Athletics, Paul V. Galvin Library, Career Services, and Technology Services."[39]

149.    Defendant charges students in its school of business a separate mandatory fee called a professional co-curricular fee.[40]

150.    This fee is advertised as a mandatory fee supporting "co-curricular programs that enhance students' academic experience and increase their career readiness."[41]

151.    Finally, Defendant charges a studio fee for all students enrolled in the Institute of Design program(s).[42]

152.    As such, it is axiomatic that the monies Plaintiff and other members of the Fees Class paid towards these fees were intended by both the students and Defendant to cover the services, access, benefits and programs for which the fees were described and billed.

153.    In accepting these terms and paying these fees, a contract was formed between Plaintiff, including the Fees Class, and Defendant, which provided that Plaintiff and other members of the Fees Class would pay these fees for or on behalf of themselves and, in exchange, Defendant would provide or make available the services, access, benefits and/or programs related to the fees, as promised.

154.    Plaintiff and other members of the Fees Class fulfilled their end of the bargain when they paid these fees for the Spring 2020 semester, either by paying out of pocket or by using student loan financing, or otherwise.

155.    However, Defendant breached the contract with Plaintiff and other members of the

---

[39] https://web.iit.edu/student-accounting/tuition-fees/mandatory-and-other-fees#student-service-fee.
[40] https://web.iit.edu/student-accounting/tuition-fees/current-tuition/stuart-school-business.
[41] https://web.iit.edu/student-accounting/tuition-fees/mandatory-and-other-fees#co-curricular-fee.
[42] https://web.iit.edu/student-accounting/tuition-fees/current-tuition/institute-design.

Fees Class by moving all classes for the Spring 2020 semester to online distance learning platforms, constructively evicting students from campus, closing most campus buildings and facilities, and cancelling most student activities.

156.    By retaining fees paid by Plaintiff and other members of the Fees Class, without providing them the full benefit of their bargain, Defendant has failed to perform its contractual obligations.

157.    Defendant's refusal to offer refunds is in bad faith.

158.    Plaintiff and other members of the Fees Class have suffered damage as a direct and proximate result of Defendant's breach, namely being deprived of the value of the services, access, benefits and/or programs the fees were intended to cover.

159.    As a direct and proximate result of Defendant's breach, Plaintiff and other members of the Fees Class are legally and equitably entitled to damages, to be decided by the trier of fact in this action, to include disgorgement of the pro-rata amount of fees that were collected but for which services were not provided.

## FOR A FIFTH COLLECTIVE CAUSE OF ACTION
## UNJUST ENRICHMENT

### (Plaintiff and Other Members of the Fees Class)

160.    Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

161.    Plaintiff brings this count on behalf of himself and other members of the Fees Class.

162.    This claim is pled in the alternative to, and to the extent it is determined a contract does not exist or otherwise apply, the contract-based claim set forth in the Fourth Cause of Action above.

163.     Defendant has received a benefit at the expense of Plaintiff and other members of the Fees Class to which it is not entitled.

164.     Plaintiff and other members of the Fees Class paid substantial student fees for on-campus services, access, benefits and/or programs and did not receive the full benefit of the bargain.

165.     Plaintiff and other members of the Fees Class conferred this benefit on Defendant when they paid the fees.

166.     Defendant realized this benefit by accepting such payment.

167.     Defendant has retained this benefit, even though Defendant has failed to provide the services, access, benefits and/or programs for which the fees were collected, making Defendant's retention unjust under the circumstances.

168.     As a result of closing campus and moving classes online, Defendant saved significant sums of money in the way of reduced utility costs, reduced maintenance and staffing requirements, reduced or eliminated hours for hourly employees, reduced or eliminated hours for paid work study students, and otherwise.

169.     Simply put, it is significantly cheaper to operate a remote, on-line campus than a fully open physical campus.

170.     Equity and good conscience require that Defendant return a portion of the monies paid in fees to Plaintiff and other members of the Fees Class.

171.     This is particularly true where, as here, Defendant is supported by a $242.9 million endowment, while its students on information and belief, do not have access to such immense financial resources, and further where, on information and belief, a substantial portion of its students have incurred substantial debt to finance an educational experience that they did not

receive.

172.    At the same time, Defendant received significant aid from the federal government, of which Defendant has indicated that it intends to retain roughly $1.86 million for itself, as opposed to passing it along to students.

173.    Defendant should be required to disgorge this unjust enrichment to the extent that Defendant has retained more than the fair market value for the product that Defendant was able to provide.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of members of the Classes, prays for judgment in their favor and against Defendant as follows:

A.    Certifying the Classes as proposed herein, designating Plaintiff as Class representative, and appointing undersigned counsel as Class Counsel;

B.    Declaring that Defendant is financially responsible for notifying the Class members of the pendency of this action;

C.    Declaring that Defendant has wrongfully kept monies paid for tuition and fees;

D.    Requiring that Defendant disgorge amounts wrongfully obtained for tuition and fees;

E.    Awarding injunctive relief as permitted by law or equity, including enjoining Defendant from retaining the pro-rated, unused monies paid for tuition and fees;

F.    Scheduling a trial by jury in this action;

G.    Awarding Plaintiff's reasonable attorney's fees, costs and expenses, as permitted by law;

H.    Awarding pre and post-judgment interest on any amounts awarded, as permitted

by law; and

I.    Awarding such other and further relief as may be just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury

in this action of all issues so triable.

Dated: September 4, 2020                         Respectfully submitted,

*/s/ Roy T. Willey, IV*
Roy T. Willey, Esq. Bar No. 101010
Eric M. Poulin, Esq. *(General Bar
Admission Forthcoming)*
**ANASTOPOULO LAW FIRM, LLC**
32 Ann Street
Charleston, SC 29403
(P): (843) 614-8888
(F): (843) 494-5536
Email: roy@akimlawfirm.com
           eric@akimlawfirm.com

                    -AND-

Steve W. Berman
**HAGENS BERMAN SOBOL
SHAPIRO LLP**
1301 Second Avenue, Suite 2000
Seattle, WA 98101
TelephoneL (206) 623-7292
steve@hbsslaw.com

Daniel J. Kurowski
Whitney K. Siehl
**HAGENS BERMAN SOBOL
SHAPIRO LLP**
455 N. Cityfront Plaza Dr., Suite 2410
Chicago, IL 60611
Telephone: (708) 628-4949
dank@hbsslaw.com
whitneys@hbsslaw.com

**ATTORNEYS FOR PLAINTIFF
HERNANDEZ AND THE PROPOSED
CLASSES**

## CERTIFICATE OF SERVICE

The undersigned attorney certifies that on September 4, 2020, he caused the foregoing **Amended Complaint** to be filed electronically with the Clerk of the U.S. District Court, using the Court's CM/ECF system, which sent electronic notification to all parties who have appeared and are registered as CM/ECF participants in this matter.

*/s/ Roy T. Willey IV*