# EXHIBIT C

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | | |
|---|---|---|
| OMAR HERNANDEZ and HANNAH GOLDEN, individually and on behalf of all others similarly situated,<br>Plaintiffs,<br>v.<br><br>ILLINOIS INSTITUTE OF TECHNOLOGY,<br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No.- 20-cv-3010<br><br>Judge Franklin U. Valderrama<br><br>Magistrate Judge Keri L. Holleb Hotaling |

**STIPULATED PROTOCOL ON THE DISCOVERY OF**
**ELECTRONICALLY STORED INFORMATION**

This matter coming before the Court jointly by Plaintiffs, Omar Hernandez and Hannah

Golden ("Plaintiffs"), and Defendant, Illinois Institute of Technology ("Defendant") (hereinafter

referred to individually as "Party" or collectively as "Parties"), having conferred pursuant to

Fed.R.Civ.P. 26(f), and the Court having reviewed this matter hereby orders the following:

**1)      PURPOSE**

This Stipulated Order will govern discovery of electronically stored information ("ESI")

in this case as a supplement to the Federal Rules of Civil Procedure, this Court's Guidelines for

the Discovery of Electronically Stored Information, and any other applicable orders and rules.

**2)      GENERAL PRINCIPLES**

The Parties are aware of the importance the Court places on cooperation and commit to

cooperate in good faith throughout the matter consistent with this Court's Guidelines for the

Discovery of ESI.

Nothing in this Stipulated Order shall be interpreted to require disclosure of information

protected by the attorney-client privilege, work product doctrine, or any other applicable privilege

or immunity. Except as expressly provided herein, the Parties do not waive any objections as to

1

the production, discoverability, authenticity, admissibility, or confidentiality of any particular documents or ESI.

This Stipulated Order may be modified in the Court's discretion or by agreement of the Parties for good cause shown. If the Parties cannot resolve their disagreements regarding these modifications, they may seek a resolution pursuant to the Federal Rules of Civil Procedure governing discovery disputes.

This Stipulated Order may only apply to the Parties.

3)     **DEFINITIONS**

   a.   "Plaintiff" means and refers to the named plaintiffs in the above-captioned matter, as well as any later added plaintiffs, as well as their principals and agents.

   b.   "Defendant" means and refers to the named defendants in the above-captioned matter, as well as any later added defendants, as well as their directors, principals, employees, agents, and affiliated companies.

   c.   "Producing Party" means and refers to any Party(ies) that produces discovery or materials in this action.

   d.   "Receiving Party" means and refers to any Party(ies) that receives discovery or materials in this action.

   e.   "Document" is defined to be synonymous in meaning and equal in scope to the usage of this term in Rules 26 and 34 of the Federal Rules of Civil Procedure. The term "Document" shall include Hard-Copy Documents, Electronic Documents, and Electronically Stored Information (ESI) as defined herein.

   f.   "Electronic Document or Data" means Documents or Data existing in electronic form at the time of collection, including but not limited to: e-mail or other means of electronic communications, word processing files (e.g. Microsoft Word),

computer presentations (e.g. PowerPoint slides), spreadsheets (e.g. Excel), and image files (e.g. PDF).

g.     "Hard-Copy Document" means Documents existing in paper form at the time of collection.

h.     "Native Format" means and refers to the format of ESI in which it was generated and/or as used by the Producing Party in the usual course of its business and in its regularly conducted activities.   For example, the native format of an Excel workbook is .xls or .xlsx.

i.     "Near-Native Format" means and refers to the format of ESI that preserves the functionality, searchability, and integrity of a Native Format item when it is infeasible or unduly burdensome to produce the item in Native Format.   For example, an MBOX is a suitable near-native format for production of Gmail, an Excel spreadsheet is a suitable near-native format for production of Google Sheets, and EML or MSG files may be suitable near-native formats for production of individual e-mail messages.   Static images are not near-native formats for production of any form except Hard-Copy Documents.

j.     "Metadata" means (i) information embedded in or associated with a native file that is not ordinarily viewable or printable from the application that generated, edited, or modified such native file which describes the characteristics, origins, usage, and/or validity of the electronic file; (ii) information generated automatically by the operation of a computer or other information technology system when a native file is created, modified, transmitted, deleted, or otherwise manipulated by a user of such system, (iii) information, such as Bates numbers, created during the course of

3

processing documents or ESI for production, and (iv) information collected during the course of collecting documents or ESI, such as file names, file paths, system dates, name of the media device on which it was stored, or the custodian or noncustodial data source from which it was collected.

k. "Optical Character Recognition" or "OCR" means the process of recognizing and creating a file containing visible text within an image.

## 4) PROPORTIONALITY

The Parties agree to use reasonable, good faith, and proportional efforts to identify, preserve, collect, process, analyze, review, and produce relevant Documents. This includes identifying and meeting and conferring on appropriate limits to discovery, including limits on custodians, identification of relevant subject matter, time periods for discovery, and other parameters to limit and guide discovery. It also includes the use of technology to achieve an efficient and effective discovery process.

## 5) PRESERVATION

The Parties have discussed their preservation obligations, as expressed in Fed. R. Civ. P. 37(e), and preservation needs, and agree that preservation of potentially relevant ESI will be reasonable and proportionate. To reduce the costs and burdens of preservation and to ensure proper ESI is preserved, the Parties agree that:

a. Pursuant to section 5 below, the Parties have exchanged a list of the types of ESI they believe should be preserved and the custodians, or general job titles or descriptions of custodians, for whom they believe ESI should be preserved, e.g., "HR head," "scientist," and "marketing manager." The Parties shall add or remove custodians as reasonably necessary;

4

b.    The Parties will agree on the number of custodians per party for whom ESI will be preserved;

c.    These data sources are not reasonably accessible because of undue burden or cost pursuant to Fed. R. Civ. P. 26(b)(2)(B) and ESI from these sources will be preserved but not searched, reviewed, or produced: systems no longer in use that cannot be accessed.

d.    Among the sources of data the Parties agree are not reasonably accessible, the Parties agree not to preserve the following:

    i.    Automatically saved versions of documents whenever created;

    ii.    deleted, slack, fragmented, or unallocated data on hard drives;

    iii.    random access memory (RAM) or other ephemeral data;

    iv.    on-line access data such as temporary internet files, history, cache, or cookies;

    v.    data in metadata fields that are frequently updated automatically, such as last-opened dates;

    vi.    system or executable files (.exe, .dll, etc.);

    vii.    systems and materials retained primarily for backup or disaster recovery purposes;

    viii.    server, system or network logs; and

    ix.    other forms of Documents or ESI whose preservation requires extraordinary affirmative measures that are not utilized in the ordinary course of business.

x.   In addition to the agreements above, the Parties agree data from the following sources (a) could contain relevant information, but (b) under the proportionality factors, should not be preserved: N/A.

## 6)   ESI DISCLOSURES

Prior to conducting searches for ESI in response to discovery requests, and in conjunction with negotiations on discovery requests, each Party shall disclose within a reasonable amount of time:

i.   <u>Custodians</u>. The names, title, and roles of custodians most likely to have discoverable ESI in their possession, custody, or control. The custodians shall be identified by name, title, connection to the instant litigation, and the type of the information under the custodian's control.

ii.   <u>Non-custodial Data Sources</u>. A list of non-custodial data sources (e.g., shared drives, servers, internal messaging applications), if any, likely to contain discoverable ESI.

iii.   <u>Third-Party Data Sources</u>. A list of third-party data sources, if any, likely to contain discoverable ESI (e.g., third-party email providers, mobile device providers, cloud storage, messaging providers) and, for each such source, the extent to which a party is (or is not) able to preserve information stored in the third-party data source.

iv.   <u>Custodial Data Sources</u>. A list of sources of custodial documents and ESI including local hard drives, network home or personal file shares, removable storage, email, removable storage media, online storage such as Dropbox or Google Drive, phones, tables, and physical files.

6

v.    <u>Inaccessible Data</u>. A list of data sources, if any, likely to contain discoverable ESI (by type, date, custodian, electronic system or other criteria sufficient to specifically identify the data source) that a Party asserts is not reasonably accessible under Fed. R. Civ. P. 26(b)(2)(B).

vi.    Documents and ESI from identified custodial and non-custodial data sources will be preserved pending identification of data to be produced in this litigation.

vii.    The Parties have a continuing obligation to identify any other custodial and non-custodial data sources that may contain information relevant to this litigation and preserve them.

## 7)    SEARCH METHODOLOGY

The Parties agree that in responding to an initial Fed. R. Civ. P. 34 request, or earlier if appropriate, they will meet and confer about methods to search ESI in order to identify ESI that is subject to production in discovery and filter out ESI that is not subject to discovery, such as whether to use search terms. No Party is required to run search terms and may instead use any other methodology that it proposes to use, including Technology Assisted Review ("TAR"), to locate ESI likely to contain responsive and discoverable information.

The Parties shall meet and confer in good faith to reach agreement on appropriate search terms, file types, date restrictions, data sources, and custodians. The Parties shall continue to cooperate in revising the appropriateness of the search methodology, such as by the Producing Party providing hit count reports. The Producing Party may identify each search term or query returning overbroad results demonstrating the overbroad results and a counter proposal correcting the overbroad search or query.

To the extent TAR methods are used, the Parties shall be prepared to discuss the reasonableness of such efforts. Documents and ESI that are captured by application of any agreed-upon search methods or TAR technology does not mean that such Documents and ESI are necessarily responsive to any discovery request or are otherwise relevant to this litigation or any required disclosure, unless otherwise agreed upon by the Parties in writing. Whether or not a document is responsive shall be determined by the Producing Party after reviewing the Documents and ESI. The use of search terms, in particular, does not preclude the use of other reasonable techniques to further identify responsive or non-responsive Documents and ESI including, but not limited to, conceptual analytics and TAR.

To the extent a response to discovery requires production of discoverable ESI contained in a structured database, the Parties shall meet and confer in an attempt to agree upon a set of queries to be made for discoverable information and generate a report in a reasonably usable and exportable electronic file for review by the Requesting Party. Upon review of the report, the Requesting Party may make reasonable requests for additional information to explain the database schema, codes, abbreviations, and different report formats or to request specific data from identified fields.

A Producing Party may always conduct a manual review for responsiveness and privilege, whether or not search terms or technology-aided review is also utilized.

## 8) PRODUCTION FORMATS

***Principles applicable to all productions of ESI and hard-copy documents.***

a.  The Parties agree to make rolling productions.

b.  Documents will be produced to the Requesting Party with searchable text, in a format to be decided between the Parties. Acceptable formats include, but are not limited to, native files, multi-page TIFFs (with a companion OCR or extracted text

file), single-page TIFFs (only with load files for e-discovery software that includes metadata fields identifying natural document breaks and also includes companion OCR and/or extracted text files), and/or multi-page, searchable PDF.

c.      Each document image file shall be named with a unique number (Bates Number). File names should not be more than twenty characters long or contain spaces.

d.      Entire Document families shall be produced, unless the Producing Party has a legal basis to withhold part of the family based on applicable privileges or governing law. The Producing Party must redact, if possible, instead of withholding an entire document. Any documents withheld must be so indicated with a slipsheet placeholder or a full page redaction, enabling the remainder of the Document family to be produced and to preserve the familial relationship.

e.      Document level extracted text or OCR for documents without extracted text will be provided by the Producing Party for every record, including for scanned hard copy documents as described above. Extracted text will not be provided for electronic documents that have been redacted because the extracted text would reveal the redacted information. Instead, these files will be re-OCRed to capture the visible text and those results will be provided in lieu of the original extracted text. Metadata for redacted files may also be omitted, except for production-related fields (e.g., bates numbers and family relationship fields) that shall be provided in the load files.

f.      The Parties are not obligated to populate manually any of the metadata fields set forth below if such fields cannot be reasonably extracted from a document. The

Parties reserve the right to request additional metadata fields should the Party show good cause for the necessity of such additional metadata.

g.    The Parties agree that this Stipulated Order governs only the format of electronic production of documents, and does not preclude a request for the production of documents by inspection of hard copy documents as they are kept in the usual course of business.

h.    **Confidentiality**:  The Parties will be entering into a confidentiality order in this matter, which will specify various confidentiality treatment levels for use in this case.  The confidentiality treatment level for any item will be provided with the created data for that item, in the field entitled "Confidentiality Treatment."  For items with no confidentiality requirements, the field will be left blank.  The Producing Party will brand any confidentiality endorsement in the lower left-hand corner on any PDFs or TIFF images representing the produced item.  Those endorsements must be in a consistent font type and size and must not obscure any part of the underlying image or Bates number.

*Principles applicable to ESI.*

i.    The Parties agree that, except as provided herein, ESI shall be produced in PDF or single-page Group IV TIFF, 300-dpi format and accompanied by an Opticon and IPRO load file (or other generally acceptable load file format) that contains document boundaries. Each PDF or TIFF file shall be given a unique file name that matches the Bates number label on first page of the PDF or of the corresponding TIFF file. The Bates number shall appear in the lower right-hand corner of images.

j.     Documents with hidden content, such as spreadsheets or presentations, shall be processed with all content unhidden and any notes displayed on the TIFF image. The Parties reserve all rights to meet and confer to request production of documents with hidden content in an alternate format.

k.     If a document is more than one page, the Parties shall make reasonable efforts, consistent with reasonable industry practices, to provide the logical unitization of the document, any attachments, and/or affixed notes as they exist in the original document.

l.     The full text of each electronic document shall be extracted ("Extracted Text") and produced in a text file. The Extracted Text shall be provided in searchable ASCII text format (or Unicode text format if the text is in a foreign language) and shall be named with a unique Bates Number (e.g., the unique Bates Number of the first page of the corresponding production version of the document followed by its file extension).

m.     The Parties agree to produce documents using the Central Standard Time Zone.

n.     The Parties may use analytics technology to identify email threads and need only produce the unique most inclusive copy and related family members and may exclude lesser inclusive copies. Upon reasonable request, the Producing Party will produce a less inclusive copy.

o.     A Producing Party may de-duplicate electronic documents and is not obligated to extract or produce entirely duplicate ESI. Removal of duplicate documents shall only be done on exact duplicate documents based on MD5 hash values across custodians. However, family relationships will be maintained and only exact email

11

family groups will be de-duplicated. No email attachment will be de-duplicated against a loose file. Global de-duplication across the entire collection will be employed. This eliminates duplicates to retain only one copy of each document per case. For example, if an identical document resides with three custodians, only the first custodian's copy will be included in the review set. The Custodian field will list the name of the custodian who was the source of the document. The Duplicate Custodian field will list the names of other custodians, separated by a semicolon, who also had the document and their copy deduped during processing.

p.    The Parties agree that the fields of metadata in Exhibit A shall be preserved, collected, and produced, only to the extent it is reasonably accessible and non-privileged. This list of metadata is intended to be flexible and may be changed by agreement of the Parties, particularly in light of advances and changes in technology, vendor, and business practices.

q.    Unless otherwise agreed to by the Parties, files that are not easily converted to image format, such as spreadsheet, database, and audio or video, will be produced in Native Format or Near-Native Format. If particular documents warrant a different format, the Parties will cooperate to arrange for the mutually acceptable production of such documents.

r.    For documents produced in Native Format, the original native files should be produced in addition to a single-page TIFF placeholder for each document. The placeholder should be endorsed with "Native Format Document" or similar language, and endorsed with the Bates number assigned to that document. The produced native file should be named with the Bates number assigned to that

12

document. Any confidentiality or other designations stamped on the placeholder for such a document shall apply to the entire native file and its contents. For documents whose native format is MS Power Point, the original native files shall be produced with any comments and color preserved. The produced native file should be named with the beginning Bates numbers assigned to that document. The Parties will confer and agree upon the other types of files that are not easily converted to image format and will therefore be produced in Native Format.

s.      The relative path to the native file should be included in the delimited text file and the produced files should be organized in a "NATIVES" folder in the production media.

t.      Native ESI, photographs, and video shall be produced in color if stored in color. Documents produced in color shall be produced as JPEG images, 300 dpi or higher and 24-bit color depth. All other documents should be produced in black and white, provided, however, that the color versions be preserved and produced upon the request of any Party. Except as already specified herein, the Parties agree to make a good faith effort to comply with reasonable and specific requests for the production of higher resolution or color images. Nothing in this order shall preclude a Producing Party from objecting to such requests as unreasonable in number, timing or scope, provided that a Producing Party shall not object if the document as originally produced is illegible or difficult to read. The Producing Party shall have the option of responding by producing a Native Format version of the document. If a dispute arises with regard to requests for higher resolution or color images, the Parties will meet and confer in good faith to try to resolve it.

*Principles applicable to hard-copy documents.*

u.  The Parties agree that documents existing in hard copy form in Defendant's possession should be produced in single-page Group IV, 300-dpi TIFF format and accompanied by an Opticon and IPRO load file (or other generally acceptable load file format). Each TIFF file will be given a unique file name that matches the Bates number label on the corresponding page. The accompanying load file shall contain, at a minimum, (a) ProdBeg, (b) ProdEnd, (c) BegAttach, (d) EndAttach, and (e) Custodian. The full extracted or OCR text should be included and produced at a document level and located in the same folder as their respective document image or OCR/TEXT folder.

v.  The Parties agree that documents existing in hard copy form may be produced in searchable PDF if the parameters in paragraph (u) are unduly burdensome and not proportionate to the needs of the case. Each PDF file will be given a unique file name that matches the Bates number label on the first page of the document.

w.  The Parties will undertake best efforts to logically unitize documents correctly. In scanning hard-copy documents, distinct documents should not be merged into a single record, and single documents should not be split into multiple records (i.e., paper documents should be logically unitized).

x.  Text of hard-copy documents shall be extracted using industry-standard OCR technology. Text files shall not contain the redacted portions of the documents.

y.  Responsive hard copy documents shall not be eliminated as duplicates of responsive ESI.

**9)     DOCUMENTS PROTECTED FROM DISCOVERY**

The obligation to provide a log of privileged or work product materials presumptively shall not apply to: (a) Attorney work product created by Outside Counsel for the Parties regarding this litigation created after the filing of the first complaint; (b) Internal communications within Outside Counsel for the Parties regarding this litigation created after the filing of the first complaint; (c) Communications between Outside Counsel and the party they represent regarding this litigation after the filing of the first complaint. The Parties agree to confer regarding other categories of information that may be excluded from logging requirements.

The Parties agree that, except as provided herein regarding presumptively privileged documents and ESI, they will produce privilege logs and will exchange information regarding claims of privilege and/or work product protection within 30 days of a production.

For documents and ESI that have been withheld or redacted as privileged, the withholding or redacting Party shall provide a privilege log of such documents and ESI, providing the following objective metadata to the extent it is reasonably available: date, author(s), custodian(s), recipient(s), file type, and subject (to the extent the subject does not reveal protected content). In addition, the withholding or redacting Party shall also provide for each document on their privilege log an identifier for the privilege being asserted (e.g., "ACP" for attorney client privilege, "WP" for work product, or other descriptions as necessary based on the specific privilege being claimed) and the document's Bates numbers.

The Parties reserve the right to request additional information regarding individual documents on the privilege log.

a.     Limitations and Non-Waiver

Pursuant to Fed. R. Evid. 502(d), the production of a privileged or work-product-protected document, whether inadvertent or otherwise, is not a waiver of privilege or protection from

15

discovery in this case or in any other federal or state proceeding. This Order shall be interpreted to provide the maximum protection allowed by Federal Rule of Evidence 502(d).

The Producing Party shall notify the Receiving Party that such material was unintentionally disclosed within ten (10) business days of learning of the inadvertent or unintentional disclosure of attorney-client or work product material. Thereafter, the Receiving Party shall return or destroy within five (5) business days the originals and all copies of the documents or things containing the allegedly privileged information. If the Receiving Party disagrees that the information is protected from disclosure by the attorney-client or work product privileges, or asserts there has been an intentional waiver of the privilege that encompasses the produced documents or things, the Receiving Party may keep any copies of such material and any original deposition exhibits while it moves the court, within fifteen (15) business days of the Producing Party's written notice of inadvertent or unintentional disclosure (unless the Parties otherwise agree to a later period of time), for an order that such information be produced, in which case, the Party claiming the privilege shall have the burden of proving that such privilege exists. The motion to the court must be filed under seal and must not assert as a ground for compelling disclosure the fact or circumstances of the disclosure itself. The Receiving Party shall not use or rely upon any such documents or information until after the resolution of any such motion by the Court.

## 10) COSTS AND BURDEN

The Parties reserve the right to seek shifting or sharing of certain discovery costs, including vendor and attorney fees, in appropriate circumstances.

## 11) PROTECTIVE ORDER

Nothing in this Stipulation shall be deemed to limit, modify, or override any provision of the any protective order entered in this action.

## 12) DISCOVERY DEFICIENCIES

16

Prior to seeking court intervention, if a Requesting Party has good cause to believe that a Producing Party's discovery efforts have been deficient, the Parties will meet and confer with the goal of identifying a means by which the Producing Party can provide assurances of the reasonableness of its discovery efforts, including, if necessary, identification of additional collection, review, and production criteria to cure the deficiency. If the Parties are unable to agree upon a means by which the Producing Party can provide assurances of the reasonableness of its discovery efforts, the Parties may seek appropriate court intervention.

## 13)    MODIFICATIONS

a.    Any practice or procedure set forth herein may be varied by agreement of the Parties, and first will be confirmed in writing, where such variance is deemed appropriate to facilitate the timely and economical exchange of electronic data or other covered discovery materials.

b.    Should any Party subsequently determine in good faith that it cannot proceed as required by this Order or that the Order requires modification, the Parties will meet and confer to resolve any dispute before seeking Court intervention.

**IT IS SO ORDERED.**

_____
J.

PLAINTIFFS OMAR HERNANDEZ AND HANNAH GOLDEN

By: /s/ Daniel J. Kurowski
Daniel J. Kurowski
Whitney K. Siehl
Hagens Berman Sobol
Shapiro LLP
455 N. Cityfront Plaza Dr., Suite 2410

ILLINOIS INSTITUTE OF TECHNOLOGY

By: /s/ William T. "Toby" Eveland
One of its attorneys
William T. "Toby" Eveland
(toby.eveland@saul.com)
Nancy DePodesta
(nancy.depodesta@saul.com)
James A. Morsch

17

Chicago, IL 60611
Telephone: (708) 628-4949
dank@hbsslaw.com
whitneys@hbsslaw.com

Steve W. Berman
Hagens Berman Sobol
Shapiro LLP
1301 Second Avenue, Suite 2000
Seattle, WA 98101
TelephoneL (206) 623-7292
steve@hbsslaw.com

Eric M. Poulin (Pro Hac Vice)
Roy T. Willey, IV (Pro Hac Vice)
Paul J. Doolittle (Pro Hac Vice)
Blake G. Abbott (Pro Hac Vice)
POULIN | WILLEY | ANASTOPOULO,
LLC
32 Ann Street
Charleston, SC 29403
(P): (803) 222-2222
(F): (843) 494-5536
eric@poulinwilley.com
roy@poulinwilley.com
Paul.doolittle@poulinwilley.com
Blake.abbott@poulinwilley.com

(jim.morsch@saul.com)
Elizabeth A. Thompson
(elizabeth.thompson@saul.com)
Andrew E. Bollinger
(andrew.bollinger@saul.com)
Saul Ewing LLP
161 North Clark Street, Suite 4200,
Chicago, Illinois 60601
(312) 876-7100

| FIELD NAME | FIELD DESCRIPTION |
|---|---|
| PRODBEGDOC | First Page document number |
| PRODENDDOC | Last Page document number |
| PRODBEGATTACH | First Page of Family group range number |
| PRODENDATTACH | Last Page of Family group range number |
| CUSTODIAN | The record owner of the file from whom the data was collected |
| DUPLICATE CUSTODIAN | The duplicate record owner(s) of the file from whom the data was collected and the record deduped during processing |
| HASH VALUE | A unique, identifying number of a file calculated by a hash algorithm, e.g. MD5. |
| FROM | Email Sender |
| TO | Email Recipient(s) |
| CC | Email Recipient(s) that were Copied |
| BCC | Email Recipient(s) that were Blind Copied |
| SUBJECT | Subject line of emails |
| THREADID | Identification of email threads |
| PARENTID | Identification of email parent relationships |
| FILENAME | Name of file |
| DATESENT | Email sent date |
| TIMESENT | Email sent time |
| DATERECEIVED | Email received date |
| TIMERECEIVED | Email received time |
| DATESAVED | Save date |
| TIMESAVED | Save time |
| FILEEXT | File extension of document |
| AUTHOR | Author of document |

| FIELD NAME | FIELD DESCRIPTION |
|---|---|
| TITLE | Title from document metadata (if applicable) |
| DATECREATED | Date document was created on non-emails |
| TIMECREATED | Time document was created on non-emails |
| DATEMODIFIED | Last date document was modified on non-emails |
| TIMEMODIFIED | Last time document was modified on non-emails |
| FILESIZE | Size of Native file |
| PGCOUNT | Number of pages in document |
| OCRPATH | Path to extracted text of native file or OCR |
| NATIVELINK | Path to email or native file document (if applicable) |
| ORIGINALPATHFOLDER | Path including filename |
| DOCTYPE | Type of document (e.g., E-file, E-mail, or Attachment) |
| ATTACHMENTCOUNT | Number of attachments |
| TIME ZONE | Document time zone offset |
| CONFIDENTIALITY | Confidentiality designation |
| REDACTIONS | Identifies whether a document has redactions (Y or N) |